[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff wife by complaint dated August 17, 1999 and made returnable to this court on September 7, 1999, seeking a dissolution of marriage on the grounds of irretrievable breakdown, a fair division of the property and debts, alimony, child support, a name change, and joint legal custody with the primary residence with the plaintiff.
The defendant appeared by counsel on September 15, 1999.
On June 14, 2001, this matter was tried and heard by the court. The parties were represented throughout the proceedings by counsel. Testimony was received from the plaintiff and the defendant. From the testimony and evidence produced at the trial and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The parties were intermarried on April 16, 1999 at St. Thomas in the Virgin Islands.
The plaintiff and defendant have one child, issue of the marriage and no other minor children have been born to the plaintiff wife since the date of the marriage. Neither party is receiving any state, federal nor local assistance. The parties have resided in this state for more than one year immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage.
Based upon a review of the exhibits as well as the testimony at trial, the court finds the following additional facts:
The plaintiff wife is 29 years old and is a high school graduate. She also has attended Manchester Community College for several years. The CT Page 8884 plaintiff is in good health. For the past ten years she has worked for the State of Connecticut Public Health Department where she is currently employed as an administrative assistant earning $799.22 per week.
The defendant husband is 44 years old. He has a B.A. Degree, a Masters Degree and MBA. The defendant is in good health. He has previously worked for Pratt and Whitney for seventeen years as an engineer earning approximately $74,000.00 a year. Upon the birth of his daughter in November of 1999, he took approximately three months of parenting time leave from his employment to provide child care for his daughter on the weekdays. He then subsequently left his employment at Pratt and Whitney and took a position as an engineer with his current employer, the Belcon Services Group Ltd. Partnership earning $928.00 per week.
The parties first began their relationship in approximately 1996. They married on April 16, 1999. Both the plaintiff and defendant testified that the marriage had problems from the very beginning. They sought marital counseling when the marriage was two weeks old. The plaintiff separated from the marital home and moved in with her parents in August of 1999. She subsequently purchased her own home in Wethersfield, CT.
The parties daughter was born on November 19, 1999. The plaintiff wife then took leave time from her employment to care for her child for the period of 11-19-1999 to 2-24-2000. Upon the expiration of her leave time, the defendant took his leave time from his employment from approximately February 25, 2000 to July 3, 2000 to provide care for the child.
At present, the father's employment schedule allows him to care for the child, Monday through Friday from 7:00 a.m. to 6:00 p.m. with the child being with the mother for most other times. The parties have stipulated as to the custody and visitation issues, excluding transportation and the court order reflects this agreement.
Since the child was born, the defendant has consistently paid voluntarily support to the plaintiff. He initially paid support of $187.00 per week. As of January 2001, he has been paying support of $125.00 per week.
During the course of the marriage, the parties did not receive or obtain any joint assets, excluding wedding gifts nor did they incur any joint obligations.
After the parties separated, the defendant has voluntarily paid the plaintiff's parents $5000.00 which represented a return of their wedding gift to the parties. He also paid the plaintiff $3000.00 to assist her during her leave from work when she provided care for their daughter. In CT Page 8885 addition, he paid $1260.00 to the marriage counselor of the parties as well as paying $2076.00 to reserve a child care slot for their child. The plaintiff testified that the child care expense could have been avoided through proper planning by the defendant.
The defendant testified that he paid $6700.00 for the plaintiffs engagement ring. He is asking the court to order the plaintiff to return the ring to him upon which he would deposit $6000.00 to an account for his minor daughter.
The plaintiff argues that the court should enter an order based upon the defendant's earning capacity. They submit it to be approximately $74,000-$76,000.00 which represents his approximate yearly earnings prior to his taking his current position. The defendant acknowledges that he is in fact earning less today but testified that he was willing to do so to enable him the ability to care for his daughter during the weekdays. The defendant testified that while at the present time his career is stalled, he would continue with his career when his daughter becomes of school age.
It is well settled law in Connecticut that a court may base financial awards on earning capacity rather than actual income of the parties. InBleuer v. Bleuer, 59 Conn. App. 167, 170, (2000) the Appellate Court stated:
 "While there is no fixed standard for the determination of an individual's earning capacity: it is well settled that earning capacity: is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. When determining earning capacity, it also is especially appropriate for the court to consider whether the defendant has willfully restricted his earning capacity to avoid support obligations." (Citations omitted: internal quotation marks omitted).
Additionally, in Unkelbach v. McNary, 244 Conn. 350, 372, (1998), the Appellate Court stated:
 "Similarly, we recognize a parent's child care responsibilities as a factor that may effect earning capacity."
The court finds that the defendant sought new employment that involved fewer hours and subsequently less pay because his new employment would allow him to be the primary caretaker of his minor child during the CT Page 8886 weekdays. In addition, the court finds that the defendant did not willfully restrict his earning capacity to avoid his support obligations. The court therefore is basing its support order on the present earned income of the defendant.
This is an exceptionally short marriage which had difficulties from its beginning. The parties ultimately separated approximately four months after their marriage.
The court finds that neither the plaintiff nor the defendant solely caused the breakdown of the marriage. The parties simply could not live together as husband and wife with the exact cause of the marital breakdown being unknown to the court.
After taking into consideration all of the criteria set forth in General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-84 and applying the same to the evidence, the court enters the following orders:
 1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
 2. Alimony is not awarded to either party, considering among other factors, the extremely short duration of this marriage.
 3. The plaintiff and defendant shall have shared custody of the minor child with shared residence subject to the following access schedule.[1]
 a. The defendant father shall parent the child each weekday from 7:00 a.m. to 6:00 p.m.
 b. The defendant father shall be guaranteed two overnight access periods with the child monthly, said periods to be determined by plaintiff mother with reasonable notice to the defendant father.
 4. The plaintiff and defendant shall engage in high conflict counseling with Dr. Susan Berry immediately for as long as determined necessary by Dr. Berry. Any costs that are not reimbursed that are associated with this counseling shall be paid 75% by the defendant and 25% by the plaintiff.
 5. The plaintiff and defendant shall mediate all access and parenting issues including but not limited to access times and transportation issues. This shall not preclude either party from pursuing any motions, including but not limited to, a motion for modification or CT Page 8887 contempt of the custody and access orders.
 6. Until the parties agree otherwise, for the days of Monday through Friday, the defendant will be responsible for picking up the child at the plaintiffs residence and the defendant will be responsible for returning the child to the plaintiff's residence. Additionally, unless the parties agree otherwise, for the days of Saturday and Sunday, if access of the child is agreed upon for the defendant, the plaintiff will be responsible for transporting the child to the defendant's residence and the plaintiff will also be responsible for picking up the child at the defendant's residence.
 7. The defendant shall pay the plaintiff the sum of $130.00 per week as support for the minor child which the court finds to be in substantial compliance with support guidelines.
 8. The plaintiff shall provide medical insurance coverage for the minor child through her existing medical insurance policy. The court has considered the cost of providing said coverage in its determination of the child support award.
The plaintiff will be responsible for 42% of any and all unreimbursed medical, dental, optical, pharmaceutical, orthodontic, psychiatric or psychological counseling, and prescription expenses for the benefit of the minor child. The defendant shall be responsible for the remaining 58% of said expenses.
The defendant shall maintain his current life insurance policy as listed on his financial affidavit entitled UTC Plan Life Insurance naming the minor child as irrevocable beneficiary to cover his support obligation until he no longer has any responsibility for support. He shall provide the plaintiff with proof of such coverage annually.
 9. The plaintiff and defendant shall alternate claiming the minor child as an exemption on the state and federal tax returns beginning with the plaintiff claiming the child in the first year.
 10. The title to the property known as 45 Olney Road, Wethersfield, CT shall remain vested in the plaintiff free of any interest of the defendant. The plaintiff shall assume, pay, and hold the defendant harmless on any mortgage on said property and shall hold the defendant harmless from the taxes and insurance on said property.
 11. The title to the property known as 15 Parker Bridge Road, Andover, CT shall remain vested in the defendant free of any interest of the plaintiff. The defendant shall assume and pay and hold the plaintiff CT Page 8888 harmless on any mortgage on said property and will hold the plaintiff harmless from the taxes and insurance on said property.
 12. The plaintiff is awarded sole interest in the State Employee Credit Union checking, savings account and the State Employees Deferred Compensation Plan as listed on her financial affidavit on file with the court free of any interest of the defendant.
 13. The defendant is awarded sole interest in the American Eagle FCU: Money Market and Savings Certificate, checking, savings, stocks, bonds and mutual funds, insurance and deferred compensation plans as listed on his financial affidavit on file with the court, free of any interest of the plaintiff.
 14. The plaintiff shall retain possession of the engagement ring currently in her possession free and clear of any claim of the defendant.
 15. Each party shall retain possession of and is entitled to all household goods, furnishings, possessions, and automobiles now under their possession and control.
 16. The defendant shall be solely responsible for the debt of $2,727.43 due Dr. Karen McDaniel and shall pay said debt within 30 days and hold the plaintiff harmless therefrom.
 17. Except as specifically otherwise ordered each party shall be responsible for the debts and liabilities set out in their respective financial affidavit and hold the other party harmless therefrom.
 18. The defendant shall contribute $1500.00 towards the plaintiffs attorney's fees within thirty days.
19. The plaintiffs former name of Amy E. Carragher is restored.
20. A contingent wage execution shall issue.
 21. Plaintiffs counsel shall prepare and file within thirty days of this decision a judgment file and both counsel shall sign the judgment file.
 ____________________ EDWARD C. GRAZIANI SUPERIOR COURT JUDGE
CT Page 8889